Filed 4/22/25  In re Royal G. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re ROYAL G. et al., Persons Coming Under the Juvenile Court Law. | B333730<br><br>(Los Angeles County Super. Ct. No. 22CCJP04876A-B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>       Plaintiff and Respondent,<br><br>       v.<br><br>TIMOTHY G.,<br><br>       Defendant and Appellant. | |

APPEAL from findings and orders of the Superior Court of Los Angeles County, Marguerite D. Downing, Judge.  Affirmed.

Benjamin Ekenes, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Aileen Wong, Deputy County Counsel, for Plaintiff and Respondent.

_____

Timothy G. (father) appeals from the juvenile court's order terminating reunification services for his son, Royal G. (Royal, born Sept. 2022), as well as the jurisdictional findings and dispositional orders regarding his daughter, T.G. (born Aug. 2023).[1]  Father contends that (1) he received defective notice of the joint status review and adjudication hearing and (2) the juvenile court improperly bypassed reunification services for T.G. immediately after terminating services for Royal.  (Welf. & Inst. Code, § 361.5, subd. (b)(10).)[2]  We affirm.

## BACKGROUND

I.    Prior Appeal

As set forth in our prior opinion (*In re Royal G.* (July 18, 2024, B326637) [nonpub. opn.] (*Royal G.*)), in December 2022, the Los Angeles County Department of Children and Family Services (DCFS) filed a section 300 petition on behalf of the then-infant

_____

[1]    The children's mother, J.S. (mother), is not part of this appeal, and their older sibling and half-sibling are not involved in this case.

[2]    All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

Royal, alleging that father abused cocaine and failed to protect the child from mother's substance abuse. (*Royal G.*, *supra*, B326637.)

In January 2023, the juvenile court sustained the allegations, took jurisdiction over Royal, and removed him from parental custody. (*Royal G.*, *supra*, B326637.) Father's case plan included monitored visitation, a full drug and alcohol treatment program, weekly random drug testing, a 12-step program, parenting education, and individual counseling.

On appeal, we affirmed the jurisdictional findings and dispositional order.[3] (*Royal G.*, *supra*, B326637.)

II. Birth of T.G. and Second Dependency Petition

In August 2023, mother gave birth to T.G. Mother tested positive for cocaine throughout her pregnancy, including one positive test on August 1. The following month, the juvenile court signed a removal warrant for T.G., who was subsequently placed with Royal and his foster caregiver.

On September 18, 2023, DCFS filed a section 300 petition on behalf of T.G. (§ 300, subds. (b)(1) [failure to protect], (j) [abuse of sibling].) As to father, the petition alleged that he failed to protect T.G. from mother's drug abuse (count b-1) and he abused cocaine, marijuana, and other substances (count b-2), which placed T.G. at risk of serious harm. It also alleged that father's similar, prior abuse of Royal endangered T.G. (counts j-1 & j-2).

---

[3] In October 2024, the Supreme Court denied review. Accordingly, father's arguments premised on the reversal of our prior opinion are moot.

III.   Detention Hearing and Continuance of Status Review Hearing

On September 19, 2023, the juvenile court held a detention hearing for T.G.  Father appeared, represented by counsel, and was advised that "both jurisdictional and dispositional issues . . . may be resolved against [him] if [he] fail[ed] to appear at any future hearing."  The court ordered T.G. detained from parental custody and set the matter for an adjudication hearing on October 27, 2023.

The juvenile court then addressed Royal's pending six-month review hearing (§ 366.21, subd. (e)).  "[O]n the recommendation and counsel's request[,]" the court continued the matter to the same day as T.G.'s adjudication hearing.

IV.   Additional Continuances

The joint status review and adjudication hearing was continued to November 29, 2023.  On that day, father's counsel obtained a second continuance because father was incarcerated in county jail.[4]

The juvenile court reconvened on December 1, 2023, but father was unable to be transported from jail due to a medical issue.  The court agreed to a third and final continuance and instructed father's counsel to give father notice of the new date.[5]  The court warned that if father was unavailable again, it would "proceed" in his absence "because this is a September

_____

[4]    Father was arrested on November 2, 2023.  His counsel explained that the arrest was "due to a parole violation . . .  [¶] [because he] had left the state to make a visit with one of his other children out of state[.]"

[5]    No written notice appears in the record.

4

petition . . . . [¶ . . . ¶] [A]t some point we need to proceed in the child's best interest[.]"

Orally, the juvenile court stated that the hearing would be held on December 5, 2023. The corresponding minute order, and the two transport orders issued to the county jail, give the date as December 6, 2023.

V.    Status Review and Adjudication Hearing

On December 6, 2023, the matter proceeded to a joint status review hearing (for Royal) and adjudication hearing (for T.G.). Father did not appear because, as the juvenile court stated, "according to the sheriff, he refused to exit his jail cell to come to court."

Father's counsel objected to going forward with the hearing, asserting that father "did want to be present[.]" Counsel said that he had orally notified father that the hearing would be on the 5th, so he was "not sure if there is confusion on [father's] part" as "he does have medical issues."[6]

The juvenile court said that it would proceed with the hearing, beginning with the status review of Royal's case. After entertaining argument, the court terminated father's reunification services, finding that "he [neither] consistently and regularly visited" Royal nor "made any substantial progress in resolving the issues that led to the removal of his son, nor . . . demonstrated the capacity and the ability to complete the objectives of treatment."

---

[6]    Father reported that his medical issues were caused by "being attacked" in jail. There is no indication that the medical issues persisted beyond December 1, 2023, or that they were of a nature likely to cause confusion.

Next, the juvenile court turned to the pending jurisdiction petition regarding T.G. Father argued, among other things, that if the court sustained the petition, he should receive reunification services. Father also wanted "to have [T.G.] placed in a permanent plan with paternal relatives." His counsel claimed that father had intended "to come to court to provide further information on this."

Regarding father, the juvenile court sustained all counts alleged in the petition, with minor amendments.[7] The court explained that T.G. was "a four month old child . . . . [F]ather has a substance abuse history and he is not currently enrolled in programming because he is currently incarcerated. [¶] In addition, he has refused to come to court[.]" Accordingly, the court removed T.G. from both parents and placed her under DCFS supervision.

Father was not given reunification services for T.G. because "[t]he [c]ourt [has] ordered termination of reunification services for a sibling and . . . the parent . . . has not made a reasonable effort to treat the problems that led to . . . removal of the sibling."

VI.   Appeal

Father timely appealed.

## DISCUSSION

I.   Notice

Father argues that his constitutional and statutory rights to due process were compromised by inadequate notice of the joint status review and adjudication hearing.

---

[7]   The court amended count b-1 to reflect that father was not a "current abuser" of substances, but instead had "an unresolved history" of drug use.

A.     *Standard of review*

We "consider de novo whether inadequate notice violated father's due process rights.  [Citation.]"  (*In re Mia M.* (2022) 75 Cal.App.5th 792, 806.)

B.     *Applicable law*

"'Parents have a fundamental and compelling interest in the companionship, care, custody, and management of their children.  [Citation.]  "[T]he state also has an urgent interest in child welfare and shares the parent's interest in an accurate and just decision.  [Citation.]"  [Citation.]  To ensure that result, "[u]ntil parental rights have been terminated, both parents must be given notice at each step of the proceedings.  [Citation.]"'"  (*In re J.H.* (2007) 158 Cal.App.4th 174, 182; see also § 291, subd. (a)(2).)

Each stage of the dependency process is governed by a different notice statute.  An adjudication hearing for a detained child requires that a parent be given notice that includes "[t]he date[] [and] time . . . of the hearing."  (§ 291, subds. (c)(1) & (d)(4).)  For a status review hearing (§ 366.21), a parent must receive notice advising him of "the right to be present, the right to be represented by counsel, the right to request counsel, and the right to present evidence."  (§ 293, subd. (d).)  Both statutes require parents to be notified that if they "fail to appear, the [juvenile] court may proceed without them[.]"  (§§ 291, subd. (d)(6) & 293, subd. (d).)

"Unless there is no attempt to serve notice on a parent[] . . . errors in notice do not automatically require reversal but are subject to" harmless error review.  (*In re J.H.*, *supra*, 158 Cal.App.4th at p. 183.)  However, the appellate courts are split as to the applicable standard of prejudice.  At least

7

two California Supreme Court cases have applied *People v. Watson* (1956) 46 Cal.2d 818, 836, "which requires the appellant to show a reasonable probability of a more favorable outcome—even to constitutional errors in dependency cases." (*In re Al.J.* (2019) 44 Cal.App.5th 652, 665–666, citing *In re Jesusa V.* (2004) 32 Cal.4th 588, 625; *In re Celine R.* (2003) 31 Cal.4th 45, 59–60.) Other courts have applied a "harmless beyond a reasonable doubt" standard to assess prejudice from defective notices. (See *In re J.H.*, *supra*, at p. 183; *In re Justice P.* (2004) 123 Cal.App.4th 181, 193 [due process violations in dependency proceedings have been held to the harmless beyond a reasonable doubt standard].)

    C.    *The alleged notice error was harmless*

Father identifies one defect in the notice he received of the joint status review and adjudication hearing—namely, that he was given the wrong date.[8]

The record shows that there was some confusion about the date of this hearing. While the relevant minute order and transport orders noted the correct date (December 6, 2023), the juvenile court orally told father's counsel that the hearing would be held one day earlier. Counsel fulfilled his obligation to notify father, but only communicated the earlier of the two dates.

---

[8] DCFS argues that father forfeited this argument by failing to object below. But father's counsel did object to holding the hearing in father's absence, which he attributed to father's receiving notice of the wrong date. This objection sufficed to preserve father's notice claim for appeal. (See *In re S.C.* (2006) 138 Cal.App.4th 396, 406 [purpose of forfeiture rule is to ensure that the juvenile court has the opportunity to correct alleged errors].)

To the extent that this mix-up rendered father's notice deficient, the error was harmless under any standard. While father did not personally attend the hearing, he was represented by counsel. (*In re Al.J., supra*, 44 Cal.App.5th at p. 667 ["[T]he fact that a parent was represented at the hearing affects the reviewing court's analysis of whether any error was harmless"].) And because both father and his counsel operated under the belief that the hearing would be one day *earlier*, they lost no time to prepare father's defense.

Most importantly, the juvenile court reported that, according to the sheriff's office, father "refused to exit his jail cell to come to court" on the day of the hearing even though he knew the court could proceed without him if he failed to appear.[9] Father cannot demonstrate that he was prejudiced by an absence that he caused by voluntarily refusing to attend the hearing.

On appeal, father argues that receiving notice of the wrong date prejudiced him in several ways. He suggests that his voluntary absence, which contributed to the juvenile court's decision to remove T.G. from his custody, was precipitated by confusion over the hearing date. He also contends that, had he attended the hearing, he would have named paternal relatives available to care for T.G., and may have been able to provide evidence about "what efforts, if any, he had made to participate in any services that may have been available to him" in jail. But the only thing in the record that supports father's contentions is

---

[9]     Because the only error father alleges is the incorrect hearing date, we presume that he otherwise received proper notice, including of the fact that if he "fail[ed] to appear, the [juvenile] court may proceed without [hi]m[.]" (§§ 291, subd. (d)(6) & 293, subd. (d).)

9

his trial counsel's speculation about why he refused to come to the hearing, and what he would have presented had he attended. Such conjecture is not sufficient to demonstrate prejudice. (See *In re Gerardo A.* (2004) 119 Cal.App.4th 988, 995 [appellate courts may reject arguments based on speculation, because "it is appellant's burden to affirmatively show error on the record"].)

II.     Bypassed Reunification Services for T.G.

Father argues that the juvenile court improperly bypassed reunification services for T.G. immediately after terminating services for Royal. (§ 361.5, subd. (b)(10).) Father forfeited this challenge by failing to object below. (*In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1338 ["[A] parent's failure to object or raise certain issues in the juvenile court prevents the parent from presenting the issue to the appellate court"].)

Forfeiture aside, father's claim lacks merit. A juvenile court is generally required to order reunification services for a parent "whenever a child is removed" from his custody. (§ 361.5, subd. (a).) But, as relevant here, section 361.5, subdivision (b)(10), provides that "[r]eunification services need not be provided to a parent" if the juvenile "court finds, by clear and convincing evidence," that (1) the court previously "ordered termination of reunification services" to a sibling of the child at issue and (2) the parent "has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling . . . from that parent."[10] We review these findings for substantial evidence. (*Jayden M., supra*, 93 Cal.App.5th at p. 1273.)

_____

[10]     Even if the juvenile court makes such findings, it still has the discretion to grant a parent reunification services if it would be in the child's best interest to do so. (*In re Jayden M.* (2023) 93 Cal.App.5th 1261, 1273 (*Jayden M.*).) We need not reach this

10

On appeal, father does not challenge the sufficiency of evidence supporting the juvenile court's findings regarding its prior termination of services for Royal and father's failure to progress "in resolving the issues that led to [Royal's] removal" or "demonstrate[] the capacity and . . . ability to complete the objectives of treatment[.]" (See *In re J.F.* (2019) 39 Cal.App.5th 70, 79 ["The juvenile court's orders are 'presumed to be correct, and it is appellant's burden to affirmatively show error'"].)

Instead, father urges us to adopt a novel interpretation of section 361.5, subdivision (b)(10), contending that "when a court terminates reunification services for a parent in one sibling's case and, then, at the same hearing, considers the disposition of a different sibling's case, the court cannot bypass that parent for reunification services" as to the latter child because not enough time has passed from the initial termination of services to show "that the parent has not subsequently made a reasonable effort to treat the problems leading to the sibling's removal."

But, as we recently held in *Jayden M.*, the plain language of section 361.5, subdivision (b)(10) specifies that the juvenile court must "assess whether the parent has '*subsequently* made a reasonable effort to treat the problems *that led to removal* of the sibling.' [Citation.] The italicized language unambiguously establishes that the reasonableness of the parent's effort is to be measured" not from the initial termination of services, but "from the point at which the first sibling . . . is removed for the same

---

issue, as father has not argued below or on appeal that reunification services would be in T.G.'s best interest.

11

reasons that underlie the current case."[11] (*Jayden M.*, *supra*, 93 Cal.App.5th at p. 1274.) This is true regardless of how quickly the bypass inquiry arises after termination of services for a sibling. (*Cheryl P. v. Superior Court* (2006) 139 Cal.App.4th 87, 99 ["[W]hen a case involves the almost simultaneous termination of services in the sibling's case and the denial of services at the child's dispositional hearing, the statutory language 'has not *subsequently* made a reasonable effort to treat the problems' . . . refers to reasonable efforts made since the removal of the sibling"].)[12]

Applying our interpretation of subdivision 361.5, subdivision (b)(10), we affirm the juvenile court's decision to bypass reunification services for T.G.

---

[11] Father insists that *Jayden M.*, *supra*, 93 Cal.App.5th 1261, does not apply to his appeal because it "did not consider the precise issue here." While *Jayden M.* did not concern a joint status review and adjudication hearing, it did establish our interpretation of the word "subsequently" in section 361.5, subdivision (b)(10), which certainly applies to this matter.

[12] Father urges that *Cheryl P. v. Superior Court, supra*, 139 Cal.App.4th 87, incorrectly interpreted section 361.5, subdivision (b)(10), ignoring that we have already adopted an identical interpretation of the relevant language. (*Jayden M.*, *supra*, 93 Cal.App.5th at p. 1274.)

## DISPOSITION

The findings and orders are affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, Acting P. J.
ASHMANN-GERST


We concur:


_____, J.
CHAVEZ


_____, J.
RICHARDSON

13